UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED    LAFAYETTE
MAR 9 2016
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 6:16cr 00048-01 -02 |
| | * | 18 U.S.C. § 241 |
| VERSUS | * | 18 U.S.C. § 242 |
| | * | |
| LOUIS ACKAL — 01 | * | JUDGE    JUDGE MINALDI |
| GERALD SAVOY — 02 | * | MAGISTRATE JUDGE |
| | * | |

MAGISTRATE JUDGE WHITEHURST

## INDICTMENT

THE FEDERAL GRAND JURY CHARGES:

### COUNT 1

### CONSPIRACY AGAINST RIGHTS
### 18 U.S.C. § 241

#### INTRODUCTION

1. At all times relevant to this indictment, the Iberia Parish Sheriff's Office ("IPSO") staffed the Iberia Parish Jail ("IPJ") in New Iberia, Louisiana. The Iberia Parish Jail housed state and federal pre-trial detainees and inmates convicted of state crimes. The jail included, among other facilities, pods that housed inmates; control booths that monitored the pods; and a chapel that was not covered by the jail's video-surveillance system.

2. The Narcotics Unit at the IPSO was a specially-trained group of

officers, led by a Lieutenant and a Sergeant. The Narcotics Unit was occasionally called to the jail to assist in conducting shakedowns of the facility.

3. On April 29, 2011, defendant **LOUIS ACKAL** was the Sheriff, in charge of both the IPSO and the IPJ.

4. On April 29, 2011, defendant **GERALD SAVOY** was a Supervisor at the IPSO.

5. On April 29, 2011, Wesley Hayes was the Warden at IPJ; and Jason Comeaux and Byron Benjamin Lassalle were Narcotics Agents at the IPSO.

6. On April 29, 2011, Warden Hayes requested assistance from IPSO during a shakedown of the jail.

7. As a result, **ACKAL** and **SAVOY**, along with members of the K-9 unit, the SWAT team, the Narcotics Unit, and the IMPACT unit, responded to IPJ to assist.

8. C.O., S.S., A.T., A.D., and H.G. were pre-trial detainees housed at the IPJ on April 29, 2011.

## THE CHARGE

9. Paragraphs 1-8 are hereby incorporated into the counts set forth below.

On or about April 29, 2011, defendants

**LOUIS ACKAL and**
**GERALD SAVOY**

willfully combined, conspired, and agreed with one another, and with Wesley

2

Hayes, Jason Comeaux, Byron Benjamin Lassalle, and other persons known and unknown to the grand jury, to injure, oppress, threaten, and intimidate inmates and pre-trial detainees, including C.O., S.S., A.T., A.D., and H.G., in the free exercise and enjoyment of the right, secured and protected by the Constitution and laws of the United States, not to be deprived of liberty without due process of law, which includes the right to be free from the use of excessive force amounting to punishment by a law enforcement officer.

## PLAN AND PURPOSE OF THE CONSPIRACY

10. It was the plan and purpose of the conspiracy that IPSO officers and supervisors would punish and retaliate against inmates and pre-trial detainees by taking them to the chapel of the IPJ, where there were no video surveillance cameras, to unlawfully assault them. It was further part of the agreement that the officers and supervisors who witnessed these unlawful assaults would not intervene to stop them.

## OVERT ACTS

11. In furtherance of the conspiracy, and to effect the object thereof, the defendants and their co-conspirators committed the following overt acts, among others, at the IPJ, in the Western District of Louisiana:

a. In response to a lewd comment made by a detainee on the recreation yard in the IPJ, **ACKAL,** in the presence of **SAVOY**, told Lassalle to take care of the detainee.

b. Understanding that **ACKAL** wanted him to assault the detainee to retaliate against him for the lewd comment, Lassalle, in the presence of **ACKAL** and **SAVOY**, asked Hayes where there was a place at the jail without cameras, and Hayes responded, "the chapel."

c. Lassalle, Hayes, and other officers then took C.O. to the chapel, where C.O. was hit multiple times with a baton while C.O. was compliant and not posing a threat to anyone. No officer in the chapel stopped the unlawful assault on C.O.

d. C.O. eventually blamed another detainee for having made the lewd recreation yard comments. In response, Lassalle escorted that detainee, S.S., to the chapel so that he could be assaulted in retaliation for the lewd comment.

e. Inside the chapel, numerous officers watched as S.S. was assaulted with a baton while S.S. was compliant, kneeling on the floor, and not posing a threat to anyone.

f. Upon learning that S.S. was in jail for a sex offense, Lassalle took his baton, held it between his own legs as if it were a penis, and forced it into S.S.'s mouth, causing S.S. to choke. No officer in the chapel stopped the unlawful assault on S.S.

g. When S.S. eventually blamed a third detainee for the lewd comments, officers escorted that detainee, A.T., to the chapel, so that he could be assaulted in retaliation for the lewd comment.

h. In the chapel, A.T. was assaulted with a baton while A.T. was

4

compliant and not posing a threat to anyone. No officer in the chapel stopped the unlawful assault on A.T.

i. At another point during the shakedown, **ACKAL** encountered H.G. and learned that H.G. had written letters complaining of the conditions at IPJ. **ACKAL** told an officer to take H.G. to the chapel.

j. Understanding that **ACKAL** wanted H.G. to be assaulted, the officer escorted H.G. to the chapel.

k. **ACKAL** also encountered A.D., a pre-trial detainee known to **ACKAL**, and told Comeaux to take care of A.D.

l. Understanding that **ACKAL** wanted him to use force to punish A.D., Comeaux took A.D. to the chapel so that he could be assaulted.

m. In the chapel, **ACKAL**, **SAVOY**, and others watched as officers beat A.D. with batons while A.D. was compliant, surrounded by officers, and not posing a threat to anyone. No official in the chapel stopped the unjustified abuse of A.D. While A.D. was being beaten, another officer struck H.G., who was also in the chapel, while H.G. was compliant and not posing a threat to anyone. During the assaults, **SAVOY** ordered a K-9 handler to make his dog bark, in order to intimidate detainees A.D. and H.G.

## COUNT 2

## DEPRIVATION OF RIGHTS
## 18 U.S.C. § 242

The Grand Jury for the Western District of Louisiana further charges:

1. Paragraphs 1 through 8 of Count 1 are realleged and incorporated by reference herein.

2. On or about April 29, 2011, at the IPJ, in the Western District of Louisiana, defendant

## LOUIS ACKAL,

while acting under color of law and while aiding and abetting others known and unknown to the grand jury, willfully deprived C.O., a pre-trial detainee, of the right, protected and secured by the Constitution and laws of the United States, not to be deprived of liberty without due process of law, which includes the right to be free from excessive force amounting to punishment by a law enforcement officer. Specifically, defendant **ACKAL** encouraged and directed another officer to assault C.O., and that officer, aided and abetted by others, then carried out an unjustified assault. The offense resulted in bodily injury to C.O. and involved the use of a dangerous weapon (a baton).

All in violation of Title 18, United States Code, Sections 242 and 2.

## COUNT 3

## DEPRIVATION OF RIGHTS
## 18 U.S.C. § 242

The Grand Jury for the Western District of Louisiana further charges:

1. Paragraphs 1 through 8 of Count 1 are realleged and incorporated by reference herein.

2. On or about April 29, 2011, at the IPJ, in the Western District of Louisiana, defendants

### LOUIS ACKAL and
### GERALD SAVOY,

while acting under color of law and while aiding and abetting each other and others known and unknown to the grand jury, willfully deprived A.D., a pre-trial detainee, of the right, protected and secured by the Constitution and laws of the United States, not to be deprived of liberty without due process of law, which includes the right to be free from excessive force amounting to punishment by a law enforcement officer. Specifically, **ACKAL** encouraged and directed another officer to assault A.D. and then, as the assault was being carried out in the chapel of the IPJ, **ACKAL** and **SAVOY** chose not to intervene, despite having the opportunity to do so and knowing they had a duty to do so. The offense resulted in bodily injury to A.D. and involved the use of a dangerous weapon (a baton).

All in violation of Title 18, United States Code, Sections 242 and 2.

A TRUE BILL:

*[signature]*

GRAND

STEPHANIE A. FINLEY
United States Attorney

*[signature]*

JOSEPH G. JARZABEK
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, Louisiana 70501
Telephone: (337) 262-6618
Louisiana Bar No. 07240

VANITA GUPTA
Principal Deputy Assistant Attorney General
United States Department of Justice
Civil Rights Division

*[signature]*

MARK BLUMBERG
SPECIAL LITIGATION COUNSEL
United States Department of Justice
Civil Rights Division
601 D Street, N.W.
Washington, DC 20004
202/305-2798
202/514-8336 (fax)
Maryland Bar

*[signature]*

TONA BOYD
TRIAL ATTORNEY
United States Department of Justice
Civil Rights Division
601 D Street, N.W.
Washington, DC 20004
202/305-3666
202/514-8336 (fax)
California Bar No. 270975

8